IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| QBE SPECIALTY INSURANCE COMPANY, INDIAN HARBOR INSURANCE COMPANY, CRUM FORSTER SPECIALTY INSURANCE COMPANY, IAT CCM LTD., and EVEREST CORPORATE MEMBER LTD., <br><br> Plaintiffs, <br><br> v. <br><br> REGATTA CONDOMINIUM OWNERS ASSOCIATION, INC., <br><br> Defendant. | CIVIL ACTION NO. 1:23-00475 |

## COMPLAINT

Plaintiffs QBE Specialty Insurance Company ("**QBESIC**"), Indian Harbor Insurance Company ("**Indian Harbor**"), Crum and Forster Specialty Insurance Company ("**Crum & Forster**"), IAT CCM Ltd. ("**IAT CCM**"), and Everest Corporate Member Ltd. ("**EVEREST**") (**hereafter together** "**Plaintiffs**"), along with certain other underwriters at Lloyd's, London ("**Underwriters**") (**Plaintiffs and Underwriters hereafter collectively** "**Insurers**"), subscribed to a policy of insurance (Policy No. 01-7590148764-S-00, **hereafter** "**Policy**") issued to Defendant Regatta Condominium Owners Association, Inc. ("**Regatta**"). Regatta submitted an insurance claim for damage to its condominium buildings from Hurricane Sally. Plaintiffs file this complaint for a declaratory judgment that (1) Regatta has already received replacement cost value ("**RCV**") for all covered damage caused by Hurricane Sally; (2) Plaintiffs have no obligation to make any further payment; and (3) the additional RCV that Regatta has demanded is not covered by the Policy. Plaintiffs' complaint is based on the following:

2

## PARTIES AND JURISDICTION

1. Plaintiff QBESIC is a North Dakota corporation with its principal place of business in New York, New York. QBESIC is therefore a citizen of North Dakota and New York.

2. Plaintiff Indian Harbor is a Delaware corporation with a statutory home office in Delaware and with its principal place of business in Stamford, Connecticut. Indian Harbor is therefore a citizen of Delaware and Connecticut.

3. Plaintiff Crum & Forster is a Delaware corporation with a statutory home office in Delaware and with its principal place of business in Morristown, New Jersey. Crum & Forster is therefore a citizen of Delaware and New Jersey.

4. Plaintiff IAT CCM is a corporation organized and existing under the laws of England with its registered office and principal place of business in London, England. EVEREST is therefore a citizen of England, a foreign state.

5. Plaintiff EVEREST is a corporation organized and existing under the laws of England with its registered office and principal place of business in London, England. IAT CCM is therefore a citizen of England, a foreign state.

6. Defendant Regatta is an Alabama corporation with its principal place of business in Gulf Shores, Alabama. Regatta is therefore a citizen of Alabama.

7. The Policy insures Regatta's three-story, wood-framed condominium building (**"Building"**) up to $6,017,898.00 total. Crum & Forster subscribed to 25% of the risk on the Policy, QBESIC subscribed to 17.5% of the risk, Indian Harbor subscribed to 15% of the risk, and Underwriters — including, but not limited to, IAT CCM and EVEREST — who are members of Syndicate 4242, subscribed to different percentages that total the remaining 42.5% of the risk. IAT CCM underwrote <u>10</u>% of Syndicate 4242's 42.5% subscription, and EVEREST underwrote <u>10</u>%

of Syndicate 4242's 42.5% subscription. Therefore, IAT CCM, through Syndicate 4242, subscribed to 4.25% of the risk on the Policy (i.e., <u>10</u>% of Syndicate 4242's 42.5%), and EVEREST, though Syndicate 4242, subscribed to 4.25% of the risk on the Policy (i.e., <u>10</u>% of Syndicate 4242's 42.5%).

8. The Insurers have paid Regatta a total of $458,482.84 RCV (after deductibles and as limited by the Policy) for all covered damage to the Building that was caused by Hurricane Sally. Regatta, however, has submitted an estimate in the amount of $4,853,210.03 RCV, and thus claims $4,394,727.19 more in RCV than what the Insurers have paid ($458,482.84 RCV).

9. Though the Insurers, for reasons stated herein, do not owe Regatta any amount beyond what they have already paid or agreed to pay, Crum & Forster's 25% share of the additional $4,394,727.19 that Enclave claims is $1,098,681.80, QBESIC's 17.5% share of that amount is $769,077.26, Indian Harbor's 15% share of that amount is $659,209.08, IAT CCM's 4.25% share of that amount is $186,775.91, and EVEREST's 4.25% share of that amount is $186,775.91. Because Plaintiffs' respective shares of the disputed $4,394,727.19 each exceed $75,000, Plaintiffs are entitled to maintain this action without joining the other underwriters who subscribed to the Policy and without regard to those underwriters' citizenships. <u>See, e.g.</u>, <u>Corfield v. Dallas Glen Hills, LP</u>, 355 F.3d 853, 864 (5th Cir. 2003); <u>Underwriters at Lloyd's, London v. Osting-Schwinn</u>, 613 F.3d 1079, 1091-92 (11th Cir. 2010) (*dicta* agreeing with and endorsing holdings in <u>Corfield</u> and similar cases).

10. The Court has jurisdiction of this action under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship in that the action is between Plaintiffs who are citizens of North Dakota and New York (QBESIC), Delaware and Connecticut (Indian Harbor), Delaware and New

Jersey (Crum & Forster), and a foreign state (IAT CCM and EVEREST), and a Defendant (Regatta) who is a citizen of Alabama.  See § 1332(a)(1)-(3).

11. There is an actual, existing, justiciable controversy between Plaintiffs and Regatta concerning the loss or damage covered by the Policy, which the Court may resolve by rendering a declaratory judgment.

## FACTS

12. Regatta is the corporate owners association for the Building located at 317 East Beach Boulevard, Gulf Shores, Alabama 36542.

13. Hurricane Sally struck Gulf Shores on September 16, 2020, damaging Regatta's Building.

14. Regatta submitted a claim under the Policy for the damage.  Regatta claims that the hurricane damaged the Building's structure, roofs, and other parts of the Building's exteriors and interiors.

15. The Insurers appointed a company called ICAT Boulder Claims ("**ICAT**") as third-party administrator to handle Regatta's claim.

16. Regatta obtained and submitted a $4,853,210.03 estimate for repair or replacement of damages to the Building, which includes amounts for replacement of the roof assemblies, exterior siding, and fenestrations, and for repair or replacement of other parts of the Building. Regatta also submitted a "Storm Damage Evaluation" report prepared by Forensic Building Science, Inc., which states that in FBS's opinion, such repair or replacement is warranted.

17. ICAT appointed an independent adjuster and retained independent experts on behalf of the Insurers, including but not limited to a building consultant and engineers, to assist with the investigation and adjustment of Regatta's insurance claim.

18. The independent engineers inspected the Building and determined that the hurricane did not damage the Building's metal roof system, modified bitumen roof, or exterior siding. Based on ICAT's and the Insurers' independent experts' investigation and estimates, the Insurers paid Regatta a total of $458,482.84 RCV (after deductibles and as limited by the Policy) for all covered damage caused by Hurricane Sally.

19. Regatta, however, continues to demand $4,853,210.03 RCV, and thus claims $4,394,727.19 more in RCV than what the Insurers have paid or agreed to pay ($458,482.84 RCV). Regatta previously sought appraisal, but appraisal is not available under the Policy and Alabama law, as the matters in dispute involve issues of causation and coverage. <u>Caribbean I Owners' Association v. Great American Insurance Co.</u>, 619 F. Supp. 2d 1178 (S.D. Ala. 2008); see also <u>Haman, Inc. v. Chubb Custom Ins. Co.</u>, 2019 WL 3573550 (N.D. Ala. Aug. 6, 2019).

PLAINTIFFS DO NOT OWE COVERAGE FOR THE
ADDITIONAL RCV THAT ENCLAVE CLAIMS

20. The Policy states that the Insurers "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."

21. Regatta claims that the Insurers owe payment for replacing roof assemblies, exterior siding, fenestrations, and other parts of the Building that sustained no direct physical loss or damage from Hurricane Sally. The Insurers have already paid for all parts of the Building that sustained direct physical loss or damage from the hurricane, as described above. Plaintiffs do not owe coverage or payment for these other parts of the Building that sustained no direct physical loss or damage from the hurricane.

22. The Policy contains the following exclusions:

B.   *Exclusions*

PD.43233845.1

*\*\**

  2.  *We will not pay for loss or damage caused by or resulting from any of the following:*

*\*\**

    d. (1) *Wear and tear;*

      (2) *Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*

*\*\**

    f. *Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.*

  23. Regatta claims that the Insurers owe payment for replacing roof assemblies, exterior siding, fenestrations, and other parts of the Building, that sustained no physical loss or damage from Hurricane Sally but instead from wear and tear, rust or other corrosion, decay, deterioration, hidden or latent defect, or continuous or repeated seepage or leakage of water or the presence or condensation of humidity or moisture or vapor that occurred over a period of 14 days or more. Plaintiffs do not owe coverage or payment for such loss or damage.

  24. The Policy contains the following limitations:

  C. *Limitations*

*The following limitations apply to all policy forms and endorsements, unless otherwise stated.*

  1. *We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.*

*\*\**

6

> c. *The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:*
>
> (1) *The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters ....*

25. Regatta claims that Plaintiffs owe payment for repair or replacement of parts of the Building located within the interior of the Building, as a result of damage from rain that did not enter the Building as a result of damage caused by the hurricane, but that instead entered the Building as a result of other causes and/or at other times. Plaintiffs do not owe coverage or payment for such loss or damage.

26. The Policy contains a WIND-DRIVEN RAIN COVERAGE ENDORSEMENT that adds certain coverage for damage caused by wind-driven rain, but only up to a sublimit of $100,000 per occurrence. The endorsement states:

> A. *Addition of Named Covered Cause of Loss*
>
> *The following is added to the policy as a named Covered Cause of Loss:*
>
> *Wind-Driven Rain, meaning direct physical loss or damage to the interior of any building covered under this policy caused by the sudden and temporary entry of rain, snow, sleet, or ice into the building when propelled by wind through or around building components, but which does not require building damage to occur prior to such rain, snow, sleet, or ice entering the building.*
>
> B. *Exclusions and Limitations*
>
> 1. *We will not pay under this Wind-Driven Rain Coverage Endorsement for loss or damage caused directly or indirectly by any of the following:*
>
> \*\*\*
>
> c. *Faulty, inadequate, or defective:*
>
> (1) *Planning, zoning, development, surveying, siting;*
>
> (2) *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*

7

   (3) *Materials used in repair, construction, renovation or remodeling; or*

   (4) *Maintenance;*

  *of part or all of any property on or off the covered location.*

 2. *The coverage provided under this Endorsement does not apply:*

  a. *to continuous or repeated seepage or leakage of water into a building; or*

  b. *in the event that the entry of rain, snow, sleet, or ice into the building was caused by failure to properly secure the building or by failure to protect the building against normal wear and tear, rust, corrosion, or decay.*

***

D. *Sublimit*

*The sublimit for Wind-Driven Rain coverage as defined, limited, and provided under this Endorsement is as stated in the Declarations [$250,000]. The sublimit for Wind-Driven Rain is included within the Limit of Insurance that applies to Building Coverage under this policy. This sublimit does not increase our limit of insurance. Notwithstanding any provisions to the contrary contained elsewhere in this policy, we will pay the least of the following for loss or damage caused by Wind-Driven Rain in any one occurrence of loss or damage:*

1. *The actual adjusted amount of loss, less the applicable deductible.*

2. *The total stated value for the building involved, as shown on the latest Statement of Values on file with us, less any applicable deductible.*

3. *The sublimit for Wind-Driven Rain shown in the Declarations.*

*All other terms, conditions, and exclusions in this policy remain in full force and effect.*

  27. Regatta claims that the Insurers owe payment for repair or replacement of parts of the Building located within its interior, as a result of loss or damage that was not caused by the sudden and temporary entry of rain into the Building when propelled by wind through or around

building components, but instead by rain that entered the Building as a result of faulty, inadequate, or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction, or faulty, inadequate, or defective materials used in repair or construction or renovation or remodeling, or faulty, inadequate, or defective maintenance; or by continuous or repeated seepage or leakage of water into the Building; or by rain that entered the Building as a result of failure to properly secure the Building or failure to protect the Building against normal wear and tear, rust, corrosion, or decay. Plaintiffs do not owe coverage or payment for such loss or damage.

28. To the extent, if any, that Regatta claims payment for loss or damage caused by the sudden and temporary entry of rain, snow, sleet, or ice into the Building when propelled by wind through or around building components, Regatta's claim exceeds the $100,000 sublimit for one occurrence (the one occurrence being Hurricane Sally). Plaintiffs do not owe coverage or payment for loss or damage exceeding $100,000.

<u>PRAYER FOR RELIEF</u>

Based on the above, Plaintiffs pray that the Court will declare that (1) Regatta has already received payment for all covered damage caused by Hurricane Sally; (2) Plaintiffs have no obligation to make any further payment; and (3) the additional RCV amount Regatta has demanded is not covered by the Policy. Plaintiffs further pray that the Court will render a judgment for such other, further, or different relief in their favor as may be warranted, the premises considered.

*/s/ A. Grady Williams IV*
A. GRADY "BO" WILLIAMS IV
WILLIAM SHREVE
MATTHEW H. HAMBRICK
Attorneys for Plaintiffs

OF COUNSEL:

PHELPS DUNBAR LLP
P.O. Box 2727
Mobile, AL  36652
(251) 432-4481
bo.williams@phelps.com
william.shreve@phelps.com
matthew.hambrick@phelps.com


**DEFENDANT IS TO BE SERVED BY PROCESS SERVER AS FOLLOWS:**

**Regatta Condominium Owners Association, Inc.**
**317 E. Beach Blvd.**
**Gulf Shores, Alabama 36542**

10